**SIGNED this 7th day of March, 2014**

_Shelley D. Rucker_
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TENNESSEE
### WINCHESTER DIVISION

In re:

                                        No. 13-12148

SUSAN COMER,                              Chapter 13

      Debtor.

### MEMORANDUM

      Creditor Federal National Mortgage Association's ("FNMA") Motion for Relief from

Stay, Debtor's Miscellaneous Motion to Set Aside Foreclosure, FNMA's Objection to Debtor's

Motion to Set Aside Foreclosure, and FNMA's Motion to Vacate or Set Aside the Court's order

confirming the debtor's chapter 13 plan came on for hearing on December 2, 2013.

      FNMA seeks relief from the stay to obtain possession of the property that it purchased at

a prepetition foreclosure sale. The debtor seeks to enforce a confirmed plan that allows her to

cure any defaults in the note secured by the property purchased by FNMA. She further seeks

relief to set aside the foreclosure sale which she contends should not have been conducted while

1

one agent of the holder of her debt was sending her welcoming correspondence at the same time

another agent was continuing to foreclosure on her home.

Based on the following findings of fact and conclusions of law, the court has determined

that the debtor lost any interest in her residence prior to her filing. Further, the existence of a

confirmed plan does not reinstate the interest that had been extinguished. The debtor did not

sufficiently provide for the foreclosure to be set aside in her confirmed plan; and to the extent

that the debtor now seeks to set aside the foreclosure, she has failed to do in the procedurally

correct manner of filing an adversary proceeding. With respect to the mixed signals allegedly

sent by the servicer, the court finds that the communications from Nationstar were not sufficient

to create a course of dealing that would have led the debtor to conclude that the foreclosure had

been stopped.  There is no interest of the estate to protect by continuing  the stay against the

purchaser at the foreclosure sale. The only stay relief still needed is relief from the stay to permit

the purchaser to obtain possession of the property.  Accordingly, the court grants FNMA's

motion for relief, denies FNMA's motion to vacate the confirmation order, and denies the

debtor's motion to set aside the foreclosure.

These are the court's findings of facts and conclusions of law made pursuant to Fed. R.

Bankr. P. 7052, as made applicable to contested matters by Fed. R. Bankr. P. 9014.

## I.    Jurisdiction

The court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334 and 28 U.S.C.

§ 157(b)(2)(G) and (L).

## II.    Facts

On May 17, 2004, the debtor purchased her residence at 400 Bragg Circle, Tullahoma,

Tennessee, and executed a note ("Note") in the original principal amount of $72,000.00, [Tr. Ex.

2

A, Note] and a Deed of Trust ("Deed of Trust") in favor of Countrywide Home Loans, Inc. ("Countrywide") pledging the residence as collateral for the Note. [Tr. Ex. B, Deed of Trust]. The Note provided that the regular monthly payments of principal and interest would be $452.96. The interest rate was 5.750% per annum and that rate that would be payable "both before and after any default described in Section 6(B)." Tr. Ex. A, Note, at 1. The Note was endorsed in blank by Countrywide. *Id.*

The Deed of Trust named Robert Wilson as Trustee. Tr. Ex. B, Deed of Trust, at 1. Countrywide was defined as the "Lender." The debtor was defined as the "Borrower." The Borrower was required to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." Tr. Ex. B, Deed of Trust, ¶ 1. In the event those payments were not made, the Lender had to:

> give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument….The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that the failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.
>
> If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by Applicable Law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in the Section 15. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

> Trustee shall deliver to the purchaser Trustee's deed conveying the
> Property without any covenant or warranty, expressed or implied. The recitals in
> the Trustee's deed shall be prima facie evidence of the truth of the statements
> made therein. Trustee shall apply the proceeds of the sale in the following order:
> (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's
> and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c)
> any excess to the person or persons legally entitled to it. If the Property is sold
> pursuant to this Section 22, Borrower, or any person holding possession of the
> Property through Borrower, shall immediately surrender possession of the
> Property to the purchaser at the sale. If possession is not surrendered, Borrower or
> such person shall be a tenant at will of the purchaser and hereby agrees to pay the
> purchaser the reasonable rental value of the Property after sale.

Tr. Ex. B, Deed of Trust, ¶ 22.

On May 28, 2012, Mortgage Electronic Registration Systems, Inc. represented that it was the holder of the Deed of Trust between the debtor and Countrywide. It transferred the deed of trust to Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing, LP ("Assignment of Deed of Trust"). [Tr. Ex. I, Assignment of Deed of Trust]. Neither party argued that the difference between Countrywide Home Loans, Inc. and Countrywide Home Loan Servicing, LP created an issue as to the ownership of the Note. Although there is no evidence in the record about how FNMA became the holder of the Note, neither party raised its ownership as an issue and the court will not raise the issue *sua sponte*.

The parties do not dispute that the debtor failed to make payments as required by the Note, and the Note went into default. On March 3, 2013, the law firm of Weiss Spicer Cash (the "Weiss Firm") notified the debtor "[e]ven though your home is now in foreclosure, it's not too late to get help" ("March 3 Weiss Letter"). [Tr. Ex. 1, March 3 Weiss Letter]. The letter contained a notice with a 1-800 number where the debtor could apply for an alternative to foreclosure. *Id.*

Approximately one week later, the Weiss Firm sent the debtor a letter dated March 12, 2013 ("March 12 Weiss Letter"), which advised the debtor that the Note was in default as a result of nonpayment. [Tr. Ex. 2, March 12 Weiss Letter].  The letter informed the debtor that the principal balance of $57,946.56 and interest due on the Note had been accelerated in accordance with the terms and conditions of the instrument; and to such amount, there had been added fees and expenses. The letter also provided a 30 day notice as required by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(a)(4), which advised the debtor that she had 30 days from the date of the letter to dispute the debt.  The March 12 Weiss Letter stated that the debtor would not receive additional correspondence from the Weiss Firm "unless circumstances warrant otherwise." *Id.* at 2.

On March 19, 2013, the Weiss Firm notified the debtor by a third letter ("March 19 Weiss Letter") that the first advertisement of the Substitute Trustee's Sale pertaining to her residence would appear Wednesday, March 27, 2013, in the Manchester, Tennessee newspaper.[1] The March 19 Weiss Letter also stated that the sale was scheduled for Wednesday, April 24, 2013, at 1:00 p.m. at the Main Door of the courthouse in Manchester, Tennessee. [Tr. Ex. D, March 19 Weiss Letter].  The second and third advertisements were to be published on April 3, 2013, and April 10, 2013, respectively. The publications were made as stated in the letter. [Tr. Ex. F, Affidavit of Publication].

On April 13, 2013, after the last foreclosure advertisement had run but before the sale, the debtor received a notice from Nationstar ("April 13 Nationstar Letter") welcoming her as a customer and notifying her that the servicing of her account had been transferred from Bank of America to Nationstar Mortgage. [Tr. Ex. 3, April 13 Nationstar Letter]. Nothing in this notice

---

[1] Manchester and Tullahoma, where the property is located, are both in Coffee County, Tennessee. Manchester is the county seat and Tennessee only requires that notice be published in a newspaper published within the county where the property is located.  T.C.A. § 35-5-101(a).

indicated that Nationstar was foreclosing although the letter contains the following language in bold under the heading "Account Status:"

> **Based on the information we have received from your previous mortgage servicer, we believe you may be experiencing a financial hardship. We want to help you stay in your home. Nationstar Mortgage may have modification programs and other workout solutions that have not been made available to you. If you would like to discuss some of your options please contact us at 1-877-450-8638.**

Tr. Ex. 3, April 13 Nationstar Letter, at 3 (emphasis supplied). The letter provided the debtor with the information that it was servicing the debt on behalf of FANNIE MAE, that her total debt was $61,507.65, and her outstanding balance included $1,452.78 in interest and $1,699.39 in expenses paid on her behalf. *Id.* The notice also stated that she had 30 days to dispute the debt and that she could request the name and address of the original creditor. *Id.* The letter also stated that, "as a reminder," her first monthly payment would be $4,785.69 and was due on April 1, 2013. *Id.* at 1.

After receiving the letter, the debtor called the Weiss Firm to tell them that she had been notified that Bank of America had transferred her mortgage to Nationstar. Testimony of Susan Comer, December 16, 2013, at 11:07 a.m. She testified that she was told the Weiss Firm did not know that Bank of America was no longer the servicer. *Id.* The Weiss Firm then confirmed with Nationstar that it wanted the foreclosure to continue. [Tr. Ex. K, Email Chain Between Nationstar and Weiss Firm]. The Weiss Firm did not communicate with the debtor after it contacted Nationstar.

On April 19, 2013, Nationstar sent a mortgage statement to the debtor ("April 19 Mortgage Statement"). She was once again welcomed as a customer. The April 19 Mortgage Statement stated that principal and interest due was $452.96 plus the escrow cost, not the entire accelerated balance. It reflected past due payments and expenses which brought the total

payment due for May 1, 2013 to $5,417.75.[2] Tr. Ex. 4, April 19 Mortgage Statement. If the payment due on May 1, 2013, was not received by May 18, 2013, Nationstar notified her that it might assess a late charge of $22.66. In the legal expense summary, attorney fees and property inspections are listed but not designated as foreclosure costs. The only mention of foreclosure is in the context of a notice for a foreclosure prevention specialist that she could contact and who was the same foreclosure prevention specialist mentioned in the April 13 Nationstar letter. *Id.* While the Mortgage Statement referred the debtor to the reverse side for "Additional Critical Notices," the reverse side did not mention that her loan had been accelerated and that if she did not pay the balance in full, her home would be sold to the highest bidder in five days. *Id.*

The debtor testified that she contacted Nationstar in April before the foreclosure sale. She testified that the reason she called was because the amount of the payment reflected in the April 13 Nationstar Letter was higher than she had expected it would be and she thought there was an error. Testimony of Susan Comer, December 13, 2013, at 11:22 a.m. Her regular payment to Bank of America had been about $620, which included the principal and interest and escrow. *Id.* at 11:12. She thought that the $5,417 balance was wrong. She asked the representative about the difference between what she had been paying and what she was now being asked to pay. She told the representative that it was a mistake and that she did not have the money. *Id.* at 11:16. She testified that the representative explained to her what was included in the number as a result of her prior defaults while Bank of America was servicing her loan. She was told that the larger sum was the amount she needed to pay and she told them she could not come up with the amount. *Id.* at 11:20.

---

[2] By the court's calculation it appears that the amount demanded on April 19 included one more month's payment than the demand in the April 13 Nationstar Letter, which indicated the amount due for April 1, 2013.

There was no evidence that she asked the Nationstar representative about the foreclosure and whether it had been stopped. Nationstar did not demand that the entire balance be paid despite the fact that the Weiss Firm had represented to the debtor that the entire balance had been accelerated in the March 3 Weiss Letter. Nevertheless, the court believes from the debtor's testimony that she seemed to have understood that Nationstar was insisting on the loan being brought current. What she thought the consequences would be if she failed to do so is unclear from her testimony, but she was concerned enough to seek help from a bankruptcy attorney shortly after the call.

She did not contact Nationstar again after receiving the Mortgage Statement. She did not apply for a modification. She never attempted to pay the amount demanded. She did testify that she began seeking bankruptcy advice in April.

On April 24, 2013, Arnold Weiss, Substitute Trustee, conducted the foreclosure sale. That same day, Mr. Weiss executed a Substitute Trustee's Deed ("Trustee's Deed") conveying the property to Robert Wilson, trustee. The deed did not list the name of the debt holder. [Tr. Ex. G, Trustee's Deed].

On April 30, 2013, the debtor sent a $650 payment by personal check to Nationstar. [Tr. Ex. 5, Account Statement from Ascend Federal Credit Union, at 2]. Nationstar attempted to negotiate the check but the account had been closed effectively by the debtor's withdrawal of all of the funds in that account on April 30, 2013. *Id.* On May 2, 2013, the debtor filed for bankruptcy. [Doc. No. 1]. Nationstar was listed as a creditor in the matrix and on Schedule D. *Id.* at 12, 25. FNMA was not listed. On May 2, 2013, debtor filed her Chapter 13 plan, which was confirmed on June 11, 2013, without objection from any party, including Nationstar and FNMA. [Doc. Nos. 8, 24]. The confirmed chapter 13 plan does not mention setting aside the foreclosure.

It merely provides for an arrearage payment to Nationstar in the amount of $92.00 per month, and maintenance payments in the amount of $617.00 per month. Both payments are inside the plan. [Doc. No. 8, at 2].

On May 3, 2013, the Trustee's Deed was recorded at the Register's Office for Coffee County, Tennessee. [Doc. No. 57, ¶ 12].

The debtor has been making her plan payments. Testimony of Susan Comer, December 16, 2013, 11:23 a.m.

FNMA has filed a Motion for Relief from Stay and To Require Debtor to Deliver Possession of Real Estate on June 21, 2013. [Doc. No. 27]. It contends that the debtor cannot use confirmation of a Chapter 13 Plan to create a property interest which has been terminated. On June 25, 2013, FNMA filed a Motion to Vacate or Set Aside the Order Confirming the Chapter 13 Plan. [Doc. No. 32]. On June 25, 2013, the debtor filed a Miscellaneous Motion to Set Aside Foreclosure. [Doc. No. 31]. On August 2, 2013, the debtor filed an objection to FNMA's Motion to Vacate or Set Aside the Order Confirming the Chapter 13 Plan. [Doc. No. 37].

### III.    Analysis

#### A. Motion for Relief

Property of the estate consists of all of the debtor's legal and equitable interests in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). In *In re Love*, a case from the Bankruptcy Court for the Western District of Tennessee, the court addressed how to determine what interest the debtor and the estate retain following a prepetition foreclosure sale and whether that interest can be brought back into the estate.

The automatic stay created by section 362(a) ordinarily stops all attempts by creditors to possess, collect, recover, or create and perfect a lien in property of the

estate. Also, it has been said that although federal bankruptcy law determines the outer boundary of what may constitute property of the estate, it is state law that determines the "nature of a debtor's interest" in the property. It is a long standing precedent that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." [I]f . . . [a] prepetition foreclosure sale is determined to be completed or finalized under applicable nonbankruptcy law, as defined under Tennessee state law, prior to the commencement of [a] chapter 13 case, then the property . . . did not become property of the estate and the prepetition default may not be cured under section 1322(b)(5) by virtue of the provisions of section 1322(c)(1) of the Code.

*Select Portfolio Servicing, Inc. v. Love (In re Love)*, 353 B.R. 216, 219 (Bankr. W.D. Tenn. 2006) (Internal footnotes omitted).

At the commencement of the debtor's case, the holder of the Note had conducted a foreclosure sale of that residence. Although the servicer for the holder of the Note changed during the course of the advertisements for the foreclosure sale from Bank of America to Nationstar, the trustee was authorized to proceed by the new servicer. [Tr. Ex. K, Email Chain Between Nationstar and Weiss Firm.]  Had the holder of the Note not authorized the Weiss Firm to proceed, the foreclosure might have been void. *Frazier v. Brice*, 4 Tenn. App. 531, 537 (Tenn. App. 1927) (Without the knowledge of and request by holder of the note, the foreclosure would be illegal and void.); *Frazier v. Galbraith*, 3 Tenn. App. 302 (Tenn. App. 1926). Neither party raised the issue of whether the holder of the Note authorized its new servicer to continue. Since the noteholder was also the purchaser at the sale, the court finds that in light of no contradicting evidence FMMA's consent is not in dispute.

The parties did not present any evidence of any other irregularities in the foreclosure process. The debtor had been given the notice of acceleration required by the Deed of Trust. The Substitute Trustee had been appointed, the foreclosure notices had run in compliance with the Deed of Trust and the Substitute Trustee called the sale and sold the property to FNMA, the holder of the Note. The only act that remained to be done before the debtor filed for bankruptcy

was the recording of the Trustee's Deed. That brings the court to the issues: first, did the debtor

have any interest in her residence after the foreclosure sale but before the Trustee's Deed was

recorded? Second, if her interest was terminated, did she revive it by confirmation of a plan that

proposed to make maintenance payments and cure the arrearage on the Note?

### 1. The Debtor's Interest in the Residence as of Filing, May 2, 2013

Judge Stair in *In re Williams* reviewed Tennessee law on this issue:

> In *In re Johnson,* 213 B.R. 134 (Bankr. W.D. Tenn. 1997), *modified after reh'g,*
> 215 B.R. 988 (Bankr. W.D. Tenn.1997), the court analyzed the finality of a
> foreclosure sale in Tennessee. The court explained that "[f]or the last 175 years,
> Tennessee has consistently required the exchange of consideration and the
> satisfaction of the statute of frauds before a foreclosure sale is deemed final."
> Under Tennessee law, "the fall of the auctioneer's hammer is not alone sufficient
> to satisfy the statute of frauds requirement." *Id.* Satisfaction of the statute of
> frauds, as is necessary under Tenn. Code Ann. § 29–2–101 (Supp.1999), requires
> a writing which evidences " 'an existing and binding contract.' " *Id.* at 136. When
> the writing takes the form of a deed, the "deed must be executed before the statute
> may be deemed satisfied." *Id.*

*In re Williams*, 247 B.R. 449, 451 (Bankr. E.D. Tenn. 2000) (internal citations omitted).

The first requirement for a completed foreclosure sale is exchange of consideration. That

requirement has been met in this case. The Trustee's Deed recites that "the highest and best

bidder" was FNMA and that it became the purchaser of the property for the sum of $63,270.00.

The Trustee's Deed goes on to recite that

> WHEREAS, the purchaser, being the holder of the indebtedness, has
> complied with the terms of the sale by paying into the hands of the undersigned
> Substitute Trustee the expenses of the sale, the balance being applied upon said
> indebtedness for which property was sold.
> NOW, THEREFORE, in consideration of the premises and payment by
> Federal National Mortgage Association of the sum of money so paid, receipt of
> which payment is hereby acknowledged, the undersigned, Arnold M. Weiss, as
> Substitute Trustee, does hereby grant, bargain, sell and convey to the said Federal
> National Mortgage Association, it successors and assigns in fee simple forever,
> the property above mentioned . . . .

Tr. Ex. G, Trustee's Deed. The recitations reflect that the consideration was exchanged.

As to the second requirement, satisfaction of the statute of frauds, Tennessee's statute of frauds provides that

> [n]o action shall be brought . . . upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year . . . unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

T.C.A. § 29-2-101(a)(4). In Tennessee, the "party to be charged" in a statute of frauds analysis refers to the party against whom enforcement of the contract is sought. *Blair v. Brownson*, 197 S.W. 3d 681, 685 (Tenn. 2006). In this case the parties did not provide evidence of a contract for sale. FNMA relies on the Trustee's Deed as the writing. Tr. Ex. G, Trustee's Deed. Since the purchase price had been paid, the only party with a remaining obligation—the conveyance of the land—was the Substitute Trustee; and  Mr. Weiss, the Substitute Trustee in whom title to the residence had been vested by the Substitute Trustee's Deed, signed the Trustee's Deed on April 24, 2013, as evidenced by the notary's oath on the deed. Tr. Ex. G, Trustee's Deed, at 2. The court finds that consideration was exchanged and that the statute of frauds was satisfied by the preparation and execution of the Trustee's Deed prior to the commencement of the debtor's case. *In re Williams*, 247 B.R. at 451. *See also In re Love*, 353 B.R. at 223 (Finding that execution of a sale memorandum by only the attorney who cried out the sale was not sufficient to meet the statute of frauds under the standard set by the Tennessee Supreme Court  in *Blair v. Brownson,* 197 S.W.3d 681, 685 (Tenn. 2006)). Consequently, the court finds that the foreclosure sale was completed and that the debtor had no interest in the residence at the time she filed her case.

## 2. Reinstatement of the Debtor's Interest Based on Confirmation of the Plan

The debtor argues that Section 1327 of the Bankruptcy Code reinstated her interest in the property. That section provides that a creditor is bound by the terms of a confirmed plan. 11

U.S.C. § 1327(a). The confirmed plan does provide for maintenance payments and the curing of

the arrearage. It does not specifically address the foreclosure sale or reinstatement of the debtor's

interest. FNMA denies it is bound by the confirmation given that it never received notice.

Further, it has asked this court to set aside the confirmation order if the court finds that the plan

can reinstate the interest to give it an opportunity to object. Based on the following analysis, the

court finds that the debtor's interest was not reinstated by the confirmation of the plan.

  The conclusion that the property was never property of the estate also precludes

reinstatement of the property interest by curing the default in a chapter 13 plan. Section

1322(c)(1) of the Bankruptcy Code provides that debtors may only cure "a default with respect

to, or that gave rise to, a lien on the debtor's principal residence . . . until such residence is sold at

a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11

U.S.C. § 1322(c)(1). *Cain v. Wells Fargo Bank, N.A. (In re Cain)*, 423 F.3d 617, 620 (6th Cir.

2005) (citations omitted) ("Generally, one line of cases holds that the new statutory language is

unambiguous and cuts off the right to cure at the foreclosure auction . . . . We agree with the

courts that have held § 1322(c)(1) to be unambiguous. In our view, "a foreclosure sale" is a

single, discrete event—typically an auction at which the highest bidder purchases the property.").

  Having found that the foreclosure sale was completed, the debtor cannot use section 1322

as a means to cure the defaults that entitled the noteholder to foreclose. The debtor's only other

alternative is to seek to set aside the foreclosure and thereby regain her interest. Such relief is

equitable relief under Tennessee law.  "If a foreclosure sale is legally held, conducted and

consummated, there must be some evidence of irregularity, misconduct, fraud, or unfairness on

the part of the trustee or the mortgagee that caused or contributed to an inadequate price, for a

court of equity to set aside the sale." *Holt v. Citizens Central Bank*, 688 S.W.2d 414, 416 (Tenn.

13

1984). As equitable relief, it must generally be requested in an adversary proceeding. Fed. R.

Bankr. P. 7001(7). The exception to this rule is when a plan provides for such relief. *Id.*

The court does not find that the debtor's proposal to cure the arrearage and make

maintenance payments as contained in her Chapter 13 plan was sufficient to provide this

equitable remedy.  In *In re Toney* another court in this district addressed the specificity required

to provide for such a remedy when property is sold at a foreclosure sale pre-petition. In that case,

Judge Cook adopted reasoning from *In re Newburn*, where the Bankruptcy Court for the

Northern District of Illinois on similar facts found that confirmation of the plan did not preclude

relief from the stay when the plan did not expressly reinstate the mortgage or terminate the

interest of the purchaser at the foreclosure sale. Rather, the plan "merely state[d] that the debtor

apparently intends to pay a debt that she no longer owes." *In re Toney*, 349 B.R. 516, 520–21

(Bankr. E.D. Tenn. 2006) (Cook, J.) (citing *In re Newburn*, No. 00B18259, 2001 WL 1010733

(Bankr. N.D. Ill. Feb. 6, 2011)). Similarly, Judge Cook, considering the analysis in *In re*

*Newburn,* found in *In re Toney* that

> The court [in *Newburn*] first held that, under Illinois law, the property was sold at
> a foreclosure sale prepetition, so it "did not become property of the estate" and the
> debtor had no right to reinstate the mortgage under § 1322(c)(1). [In re *Newburn*,
> No. 00B 18249, 2001 WL 1010733(Bankr. N.D. Ill. Feb. 6, 2011)] *Id.* at *2–*4.
> The court then held that confirmation of the plan did not preclude relief from the
> stay, first because the issue was reserved and second because the plan language
> was itself inadequate to reinstate the mortgage:
>
>> In this case, the plan does not expressly reinstate the mortgage, nor
>> does it contain any language resurrecting the debtor's ownership
>> interest or terminating Beneficial's new ownership interest in the
>> property. Instead, it provides only that unnamed secured creditors
>> (presumably those listed in Schedule D, including Beneficial) will
>> be paid by the trustee on a "pro rata" basis, and that the debtor
>> shall be the disbursing agent for the "regular monthly payments
>> due" to Beneficial. Thus, the plan merely states that the debtor
>> apparently intends to pay a debt that she no longer owes. The court
>> finds that the language of the plan is wholly insufficient to revive

14

> the debtor's terminated interest in the property, reinstate the
> mortgage, and strip Beneficial of its ownership of the property.
> The court agrees with the *Newburn* court's reasoning. [T]he debtor's plan in this
> case simply proposed to pay a mortgage that had been extinguished prepetition.
> The plan as confirmed does not revive the debtor's terminated interest in the
> property, reinstate the mortgage, and strip the bank of its ownership of the
> property.…this court made no preconfirmation determination that the debtor still
> had rights in the residence after the foreclosure sale. Having made no such
> determination, the question here is whether the language in the debtor's confirmed
> plan was sufficient in and of itself to revive the debtor's terminated interest in the
> property, reinstate the mortgage, and strip the bank of its ownership of the
> property. Because the court has concluded that it was not, the bank's motion for
> relief from the automatic stay will be granted.

*In re Toney*, 349 B.R at 521–22. The *Toney* court describes exactly the same plan terms that exist

in this case. Applying Judge Cook's reasoning to the case at hand, the court does not find that the

terms of the debtor's plan were sufficient to reinstate the interest.

### 3. Relief Requested

Section 362 of the Bankruptcy Code stays all actions against property of the estate and all

actions against the debtor. 11 U.S.C. § 362(a)(2) and (6). Because the debtor's interest in the

property had terminated prepetition, it did not become property of the estate under 11 U.S.C.

§ 541(a). Because the stay only applies to property of the estate, the court finds that FNMA does

not need relief from the stay to terminate the estate's interest in the property. Further, the court

finds that the recording of the Trustee's Deed after the commencement of the case was not an act

which affected property of the estate and is not void as a violation of the automatic stay.

As to the second request by FNMA to require the debtor to move from the property, the

court finds that a dispossessory is an action against the debtor which is stayed. 11 U.S.C.

§ 362(a)(6). However, the court finds that cause exists to modify the stay when the debtor's

underlying property interest has been divested.[3] While the court will modify the stay to permit

FNMA to proceed, the court will not order the debtor to surrender the property. FNMA must

seek that relief in the state court. Further, ordering the debtor to surrender the property would

require equitable relief and FNMA has not filed an adversary proceeding. Fed. R. Bankr. P.

7001.

### B. Request to Vacate the Confirmation Order

FNMA has requested that the court vacate the confirmation order on the basis that it did

not receive notice. Because the court has found that the debtor had no interest in the property by

the time the case was filed and that the confirmation order did not revive the interest, the court

sees no reason to vacate the confirmation order to permit an objection to obtain relief that has

already been granted. The confirmation order had no adverse effect on FNMA. To the extent that

the debtor wants to modify plan to cease making payments to FNMA, she may do so although

there may be some postpetition accrual of rent under the terms of the Deed of Trust. Tr. Ex. B.,

Deed of Trust, ¶ 22.

---

[3] Bankruptcy Code Section 362(b)(23) provides that filing for bankruptcy is not a stay  "of the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor." This exception to the automatic stay does not apply in this case for three reasons. First, no judgment for possession was instituted against the debtor pre-petition. Second, the debtor does not reside as a tenant under a lease or rental agreement. Lastly, the debtor maintains a possessory interest in the property, which is protected by the automatic stay. Under the terms of the Deed of Trust, "[i]f possession is not surrendered [after foreclosure], Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale." Tr. Ex. B, Deed of Trust, ¶ 22. By the terms of the Deed of Trust, the debtor was granted a possessory interest in the property, which is protected by the automatic stay. *See In re Convenient Food Mart No. 144, Inc.*, 968 F.2d 592, 593–94 (6th Cir. 1992) (finding tenancy at sufferance was a possessory interest falling within the ambit of the automatic stay); *In re Appalachian Oil Co., Inc.*, 09-50259, 2009 WL 2843371 (Bankr. E.D. Tenn. Aug. 31, 2009) ("[T]enant filing bankruptcy retains possession of the premises under a tenancy at will or at sufferance, the debtor's possessory right is subject to the automatic stay of 11 U.S.C. 362(a)(1),(2), and (3).").

### C. Motion to Set Aside Foreclosure

The debtor raises claims that Nationstar's actions were unfair to the debtor and that those actions resulted in an unfair price at the foreclosure sale. The debtor presented the real estate assessment data for the property issued by Coffee County which showed that the "Market Appraisal of the Property" was $91,800. [Tr. Ex. 6, Real Estate Assessment Data.] The foreclosure sale price was $63,270. The debtor did not offer any other proof as to value to indicate that the foreclosure brought less than fair market value. The court does not find the property assessment to be persuasive evidence on the issue of insufficient value. The court also finds the evidence of unfair or misleading acts to be ambiguous. The debtor argues that the court should set aside the foreclosure on the basis that Nationstar was sending mixed signals about its intentions. It sent a "welcome" letter, not one that said "we are continuing to foreclose on your residence." It told her that her first payment would be the arrearage, not the entire balance although the prior correspondence from the Weiss Firm stated that the entire debt had been accelerated. It told her she would have 30 days to dispute the debt, not that it had authorized the sale of her home before the end of the month. Although her pleadings indicate that she interpreted these actions as an indication that the foreclosure had been stopped, at trial her testimony was not that clear. She admitted that she did not seek a modification and reinstatement of her loan. Testimony of Susan Comer, December 16, 2013, 11:20. She questioned the amount of the arrearage and was told she would have to send in the full arrearage. *Id.* at 11:18. She then sent in a payment of $650, as had been her course of dealing with Bank of America, in the hope that Nationstar would accept that amount and allow her to cure the arrearage slowly. She did not testify that she ever obtained Nationstar's agreement to her proposal or confirmation that the foreclosure was not going forward.

Had she tendered the cure amount the court would be more sympathetic to her theory. It appears that she could have prevented the sale by tendering the arrearage amount under Tennessee law based on Nationstar's communications. The Deed of Trust required acceleration prior to exercising the remedy of foreclosure and she was notified of that action. Although no proof of acceleration other than the letter from the Weiss Firm was introduced into evidence, the debtor did not dispute that the debt had been accelerated. Acceleration clauses are valid in Tennessee. *Lively v. Drake*, 629 S.W.2d 900, 902 (Tenn. 1982). If the amount due is tendered before the debt is accelerated, then the option to accelerate clause is inoperative. "However, a tender of the overdue amount after the exercise of such option and before sale will not prevent such acceleration **unless so agreed by the parties**." *Id.* at 903 (emphasis supplied). Nationstar's correspondence appears to offer the debtor an agreement to undo the acceleration by requiring only the cure amount to be paid. However, in this case the debtor did not tender the cure amount before the sale. Even if the court viewed that she sent the partial payment as a counter offer, she withdrew that counteroffer by emptying her bank account before the check could be honored.

The debtor also argued that she had had a course of dealing with Bank of America that led her to believe that she might be able to send in less than the full amount demanded to Nationstar. The *Lively* case discusses whether a course of dealing might result in a waiver of the right to accelerate if the creditor has previously not accelerated and does not give prior notice to the debtor of the creditor's intention to do so. *Id.* at 903. That basis for a waiver does not exist in this case. Bank of America provided notice of its intent to accelerate if the defaults continued. The March 3 Weiss Letter specifically states that the Note had been accelerated prior to the Weiss Firm sending its communication.  As for Nationstar, the debtor's course of dealing consisted of two letters and one call. In all three communications, Nationstar required the loan to

18

be brought current. The debtor did not testify to a single representation by Nationstar or the

Weiss Firm that it would not foreclose. The debtor admitted she never specifically asked if the

foreclosure had stopped. To the extent that Nationstar offered help to prevent the foreclosure, the

debtor admitted that she did not take any action to avail herself of those offers. The court views

Nationstar's willingness to allow her to reinstate her obligation if she could bring the loan

current as an offer that she did not accept. The court does not find that Nationstar or the Weiss

Firm established a new course of dealing that would have led the Debtor to believe that the

noteholder would accept less than a complete cure of the existing defaults.

### III. Conclusion

The Motion for Relief is granted and the stay is modified to allow FNMA to proceed to

obtain possession of the property. The Motion to Vacate the Confirmation Order is denied. The

court finds that it is not necessary to vacate the order based on the terms of the plan that were

confirmed although the court recognizes that the debtor may seek to modify the plan with respect

to FNMA and Nationstar. The Motion to Set Aside the Foreclosure is also denied.

# # #